OPINION
{¶ 1} Paul E. Knapp appeals from a summary judgment rendered in favor of Nationwide Agribusiness Insurance Company on Knapp's claims seeking underinsured motorist coverage.
 {¶ 2} On February 11, 2002, Paul Knapp, a ninth grade social studies teacher at Trotwood-Madison High School, left school early and went to a hobby shop in pursuit of a model airplane of a Wright Flyer to be used in a new cooperative learning exercise Knapp had planned for his class. After leaving the hobby shop and heading home, Knapp was severely injured in an automobile accident. Knapp received a settlement from the insurance provider of the driver at fault in the accident.
 {¶ 3} At the time of the accident, Knapp's employer, Trotwood Madison City School District, had a commercial auto policy issued by Nationwide Agribusiness Insurance Company, which included underinsured motorist coverage with a liability limit of $1,000,000. Under the Ohio Uninsured Motorists Coverage portion of the commercial auto policy, "Who Is An Insured" was defined as follows:
 {¶ 4} "1. The following, while in the course and scope of their employment by the `Named Insured' or while performing duties related to the `Named Insured's' business:
 {¶ 5} "a. A full or part-time `employee' or substitute `employee' of the `Named Insured';
 {¶ 6} "b. A student teacher assigned to the `Named Insured.'"
 {¶ 7} Trotwood Madison City School District was listed as the Named Insured on the policy.
 {¶ 8} Knapp filed a complaint against Nationwide seeking underinsured motorist coverage. Knapp filed a motion for summary judgment. Construing the policy in favor of the school, the policyholder, pursuant toWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, the trial court denied Knapp's motion for summary judgment finding that Knapp did not qualify as an insured under the policy because Knapp's driving home from the hobby shop was not in the course and scope of employment and did not consist of performing duties related to the school's business. The parties entered into an agreed stipulation and entry granting summary judgment in favor of Nationwide on the basis of the trial court's decision on Knapp's motion for summary judgment.
 {¶ 9} Knapp's sole assignment of error is as follows:
 {¶ 10} "The trial court held that Westfield Insurance Company v.Galatis Required it to consider the interests of the policyholder in a coverage dispute and, without a true examination of the policyholder's interests, erroneously concluded that no coverage existed for an employee injured while performing duties related to the policyholder's business."
 {¶ 11} Knapp contends that the trial court erred in rendering summary judgment in favor of Nationwide based on its conclusion that when construing the policy in favor of the school, the policyholder, Knapp is not an insured under the school's policy because his trip from the hobby shop did not amount to performing duties related to the school's business.
 {¶ 12} We review the appropriateness of summary judgment de novo and follow the standards as set forth in Civ.R. 56. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369-370,1998-Ohio-389, 696 N.E.2d 201, citation omitted.
 {¶ 13} Knapp contends that the trial court erred when it construed the policy in favor of the school and concluded that his trip from the hobby shop did not amount to performing duties related to the school's business. Knapp argues that the interests of the school are not aligned with the interests of Nationwide. Knapp argues that the school has no interest in denying coverage to employees that are covered under the policy while performing duties related to the school's business, because the school bargained for the coverage and has paid premiums for the coverage.
 {¶ 14} Nationwide contends that the trial court did not err in construing the policy in favor of the school and concluding that Knapp's driving home from the hobby shop did not amount to performing duties related to the school's business. Nationwide argues that the school's interests are not aligned with Knapp's interests because the school's insurance premiums would increase if Nationwide were to pay unwarranted underinsured motorist benefits.
 {¶ 15} The Supreme Court of Ohio discussed the interpretation of insurance contracts at great length in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. The Ohio Supreme Court stated as follows:
 {¶ 16} "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.
 {¶ 17} "On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties.
 {¶ 18} "It is generally the role of the finder of fact to resolve ambiguity. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured.
 {¶ 19} "There are limitations to the preceding rule. `Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.' Likewise, where `the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party.' This rings especially true where expanding coverage beyond a policyholder's needs will increase the policyholder's premiums." Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11-14, internal citations omitted.
 {¶ 20} The Supreme Court of Ohio went on to state that "[i]n the insurance context, we have assumed that the insurer, as the drafter of the policy, is always in a stronger bargaining position than is the insured. Thus, ambiguities are construed in favor of the insured. A claimant, however, is not necessarily an insured." Id., at ¶ 34. "An insured can be the policyholder or another who is entitled to insurance coverage under the terms of the policy. When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant." Id., at ¶ 35, citations omitted.
 {¶ 21} Under the Ohio Uninsured Motorists Coverage portion of the commercial auto policy in this case, "Who Is An Insured" is defined as follows:
 {¶ 22} "1. The following, while in the course and scope of their employment by the `Named Insured' or while performing duties related to the `Named Insured's' business:
 {¶ 23} "a. A full or part-time `employee' or substitute `employee' of the `Named Insured';
 {¶ 24} "b. A student teacher assigned to the `Named Insured.'"
 {¶ 25} Knapp contends that he is an insured under the "performing duties related to the `Named Insured's' business" language. Nationwide argues that the phrase "performing duties related to the `Named Insured's' business" does not apply to Knapp, because that phrase was intended to provide coverage to student teachers and volunteers who are not employees and would not be covered by the course and scope of employment language. Nationwide contends that the phrase was not meant to expand coverage to an employee whose coverage is limited to actions taken while in the course and scope of employment.
 {¶ 26} We conclude that Nationwide's interpretation of the phrase "performing duties related to the `Named Insured's' business" is not reasonable. The language clearly defines an insured as "[t]he following, * * * while performing duties related to the `Named Insured's' business," and then lists a full time employee of the named insured as one of the following. We conclude that the policy is not reasonably open to different interpretations, and therefore, is not ambiguous. Because the language of the policy is clear, we will look to the plain and ordinary meaning of the language used in the policy and we will look no further than the writing itself to find the intent of the parties. See Galatis,
supra. At the time of the accident, Knapp was a full time employee of Trotwood Madison City School District, the named insured under the policy. Therefore, Knapp is an insured under the policy if he was performing duties related to the school's business at the time of the accident.
 {¶ 27} Nationwide contends that even if the phrase does apply to Knapp, he was not performing duties related to the school's business at the time of the accident because he was not under a duty to purchase a model airplane for his class using his own vehicle after school hours without the knowledge of his employer. Knapp contends that he was performing duties related to the school's business when the accident occurred because his trip to the hobby shop was for the sole purpose of creating course work for his class, which fell within the responsibilities and essential functions of a teacher at the Trotwood Madison High School.
 {¶ 28} Knapp relies on Zirger v. Ferkel, Seneca App. No. 13-02-05, 2002-Ohio-2822, to support his position. In Zirger, the Third District Court of Appeals found that Kay Zirger, a teacher for Mohawk Local School District, was an insured under a commercial auto policy issued by Nationwide Agribusiness Insurance Company to the school because she was performing duties related to the school's business at the time of the accident. See id., at ¶ 18. The court reasoned as follows:
 {¶ 29} "The motor vehicle accident occurred as Kay Zirger was driving home from the Mohawk School District's Administration building where she had attended a special meeting concerning employee health benefits. Kay gave deposition testimony that she attended the meeting at the request of the school administration, who earlier that day had asked for volunteers from the staff to participate in the meeting. Kay did not work in the Administration building and was only there for the purpose of the special meeting. The trial court determined that Kay's attendance at the meeting and her subsequent return home sufficiently related to her duties with the school district. We agree with the well-reasoned conclusion of the trial court." Id., at ¶ 18.
 {¶ 30} We find that this case is distinguishable from Zirger, because the record shows that the school did not request or require that Knapp go to the hobby shop to purchase a model airplane for his class. In Knapp's deposition, he stated that he never asked for his employer's permission to go look for and purchase a model airplane for his class. Although Knapp testified that it was his duty to develop cooperative learning activities for his class, he also stated that his employment contract with the school did not require him to purchase materials on his own for his class. In his affidavit attached to Nationwide's memorandum in opposition to Knapp's motion for summary judgment, John Jahoda, the director of human resources for the school, averred that Knapp was not performing a job duty "when he drove to purchase a model airplane for use in class since running errands on personal time is not within a teacher's duty." Jahoda also averred that the job description for teachers did not include purchasing supplies as an "essential function." A review of the job description for teachers employed by the school reveals that it does not specifically include that teachers have a duty to purchase materials on their own.
 {¶ 31} Duty is defined as a legal obligation or "[a]n obligation that one has by law or contract." Black's Law Dictionary (6 Ed. 1990) 505. Based on the record before us, we cannot conclude that Knapp was legally or contractually obligated to drive to the hobby shop to purchase a model airplane for his class, and therefore, did not have a duty to do so. We conclude that Knapp was not performing a duty related to the school's business at the time of the accident and therefore, is not an insured under the policy.
 {¶ 32} The judgment of the trial court entering summary judgment in favor of Nationwide is affirmed.
Brogan, P.J., and Grady, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District sitting by assignment of the Chief Justice of the Supreme Court of Ohio)